IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TYLER WARD BOWCOTT,

        Plaintiff,

v.                                  CIVIL ACTION NO. 3:17-cv-02329

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This action seeks review of the Social Security Commissioner's final decision denying Plaintiff's application for children's insurance benefits under Title II of the Social Security Act. *Compl.*, ECF No. 2, at ¶¶ 3–4. Pursuant to a standing order issued under 28 U.S.C. § 636(b)(1)(B), this action was referred to United States Magistrate Judge Dwane L. Tinsley for proposed findings of fact and recommendation for disposition. *Standing Order*, ECF No. 4. The Magistrate Judge submitted proposed findings and recommended that Plaintiff's motion for judgment on the pleadings be denied, that the like motion of Defendant be granted, and the decision of the Commissioner be affirmed. *Proposed Findings and Recommendation* (Aug. 10, 2018), ECF No. 16. Plaintiff, Mr. Tyler Ward Bowcott ("Bowcott"), now objects to the Findings and Recommendation. *Objections to Proposed Findings and Recommendations* (Aug. 27, 2018), ECF No. 17 [hereinafter *Objections*]. For the reasons below, the Court denies Plaintiff's objections, affirms the Commissioner's decision, and dismisses this matter from this Court's docket.

**I.     Background**

Bowcott filed an application for child's insurance benefits on June 28, 2013. *Compl.*, at ¶ 3. His claim was denied initially on November 21, 2013, and upon reconsideration on May 12, 2014. *Id.* Bowcott then requested an administrative hearing before an Administrative Law Judge (ALJ), who also denied the claim in a decision dated July 8, 2015. *Id.* The ALJ's decision became the final decision of the Commissioner on February 13, 2017, when the Appeals Council denied Bowcott's request for review. *Id.* at ¶ 4. Bowcott then filed the present action seeking judicial review of the administrative decision on April 13, 2017, pursuant to 42 U.S.C. § 405(g). *Id.*

**II.    Standard of Review**

This Court must "make a *de novo* determination of those portions of the ... [Magistrate Judge's] proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see e.g.*, *Berry v. Colvin*, No. 14-9859, 2015 WL 1506128, at *1 (S.D. W. Va. Mar. 31, 2015). When this Court reviews a final agency decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 301 *et seq.*, it must ask whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached under the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d

585, 589 (4th Cir. 1996)). Rather, a court's review is limited to whether, based on the whole record, the ALJ considered the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

It is not the role of the courts to search for reasons for a decision which were not furnished by the ALJ. *See Tanner v. Astrue*, C/A No. 2:10–1750–JFA, 2011 WL 4368547, at *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, the Fourth Circuit stated that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citation omitted). "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

The Social Security Regulations follow a "five-step sequential evaluation process" to determine disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If a claimant is found "disabled or not disabled" at any point, it is unnecessary to make further inquiry. *Id.* at §§ 404.1520(a)(4), 416.920(a)(4). The first step in the process is to determine whether a claimant is engaged in substantial gainful activity. *Id.* at §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b). If the claimant is not engaged in substantial gainful activity, the second step is to determine whether the claimant suffers from a severe impairment. *Id.* at §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). If a severe impairment is found, the third step is to determine whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative

Regulations No. 4. *Id.* §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d). If a claimant meets step three, the claimant is disabled and awarded benefits. *Id.* If the claimant does not meet step three, the fourth step is to decide whether the impairments prevent the claimant from performing past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If a claimant satisfies step four, there is a *prima facie* case of disability, and the burden shifts to the Commissioner. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fifth step is then to determine whether the claimant is able to perform other types of substantial gainful activity, considering the claimant's physical and mental capacities, age, education, and prior work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) & (f), 416.920(a)(4)(v) & (f). It is the Commissioner's burden to show (1) the claimant has the capacity to perform another job considering the claimant's age, education, work experience, skills, and physical shortcomings and (2) the specific alternative job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir.1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
> (1)     Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal

picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate

listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

## III. Discussion

Bowcott objects to the Magistrate Judge's Proposed Findings and Recommendation and contends that the ALJ's "analysis of the paragraph B criteria" and his "evaluati[on] [of] the medical opinions of records" in formulating his residual functional capacity ("RFC") does not rest on substantial evidence. *See Objections*, at 2–3. Bowcott makes these assertions because the "ALJ failed to obtain the knowledge and understanding [of Asperger's syndrome] necessary" to make his determinations. *Id.* Bowcott then contends that the Magistrate Judge did not "consider[]" this failure of the ALJ. *Id.* at 2.

### 1. Paragraph B Criteria

As stated above, the Social Security Regulations follow a five-step sequential evaluation process to determine disability claims, and once it is found that a claimant suffers from a severe impairment, the third step is to determine whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. It is at this third step where Bowcott alleges the ALJ made his first mistake, by incorrectly finding that Bowcott's "autism disorder did not meet or equal Listing 12.10." *See Pl's. Mem. in Supp. of J. on the Pleadings*, ECF No. 14, at 5. To meet Listing 12.10 for an autistic disorder or other pervasive developmental disorder, including Asperger's syndrome, a claimant must establish: (1) qualitative deficits in reciprocal social interaction; *and* (2) qualitative deficits in verbal and non-verbal communication and in imaginative activity. 20 C.F.R., pt. 404, subpt. P, app.1, § 12.10. Additionally, these deficits must result in *at least two* of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation each of extended duration. *Id.* The group of these four possibilities are often referred to as "Paragraph B." *Tr.*, ECF No. 9, at 14. A "marked" limitation means more than moderate but less than extreme, and "repeated episodes of decompensation" means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id.* The ALJ found that Bowcott did not satisfy any of the Paragraph B criteria because, based on an analysis of various evidence, Bowcott did not have any marked limitations and no episodes of decompensation. *Id.* at 14–15.

Before beginning, the Court must address the essence of Bowcott's argument, which is essentially that the ALJ gave improper *weight* to the evidence, and this improper weight is a result of the ALJ's misunderstanding of Asperger's syndrome. *See Pl's. Mem. in Supp. of J. on

*the Pleadings*, at 6–9. However, while Bowcott is perturbed that the Magistrate Judge did not *directly* "consider[] whether the ALJ's analysis reflected an appropriate understanding of … Bowcott's Asperger's syndrome," and "simply repeated" the ALJ's summary, that decision was likely because an ALJ's understanding of the underlying issue that determines the outcome of a case is implicitly essential in every review of their decision. *See Objections*, at 2–3. After all, the standard of review here is "substantial evidence," and substantial evidence is defined as evidence which a "reasoning mind" would accept as sufficient to support a particular conclusion. One cannot actually offer a "reasoning mind" without understanding the issues involved. Thus, while the following analysis of this Court will not *directly* address whether the ALJ had an appropriate "understanding" of Asperger's syndrome, that is because the standard of review the Court conducts *implies* and necessarily requires that we hold a person with an *understanding* of Asperger's syndrome could accept the evidence as sufficient to support the ALJ's conclusion.

*a. Social functioning and Concentration, Persistence, or Pace*

Bowcott first argued to the Magistrate Judge that the ALJ was incorrect in finding that Bowcott only has moderate difficulties in social functioning and mild difficulties in concentration, persistence, or pace. *See Pl's. Mem. in Supp. of J. on the Pleadings*, at 6. Bowcott's reasoning is that "Asperger's syndrome is a developmental disorder that affects social and sometimes even physical functioning, and is not an *intellectual* disorder," yet "the ALJ repeatedly referred to Bowcott's *intelligence* testing and ability to engage in socially-isolative behaviors, such as playing video games and Legos, to support his finding that Bowcott had only moderate difficulties in social functioning and mild difficulties in concentration, persistence, or pace." *Id.* at 6 (emphasis added). Bowcott concludes that his "IQ, language skills, reading and math scores, and his ability to function in isolation are not probative evidence that [he] retained

the ability to perform the basic mental demands of competitive work within the social functioning and concentration, persistence, or pace domains." *Id.* The Court rejects the position that the ALJ did not have substantial evidence for his findings, as the ALJ referred to facts beyond intelligence testing and isolating behaviors.

In reaching his conclusion that Bowcott has moderate difficulties in social functioning the ALJ referred to Bowcott's appropriate interactions with the psychologist—which included normal eye contact, good attitude, good cooperation, and spontaneous conversation—and Bowcott's own report that he gets along with authority figures. *Tr.*, at 15. Additionally, Bowcott's statements that he "sometimes says things that hurt people's feelings or are socially inappropriate" and that he "only socializes a little bit" were considered by the ALJ. *Id.* While the latter statements could lead someone to reach a conclusion different from the ALJ, the Court will not "undertake to re-weigh conflicting evidence," and finds that Bowcott's positive interactions with the psychologist combined with his own reports regarding authority figures are evidence which a reasoning mind would accept as sufficient to support the conclusion that Bowcott has moderate, but not marked or extreme, difficulties in social functioning.

In reaching his conclusion that Bowcott has mild difficulties with concentration, persistence, or pace, the ALJ referred to Bowcott's examiner's findings that Bowcott's immediate memory, recent memory, remote memory, persistence, and pace all appear to be within normal limits. *Tr.*, at 15. While the ALJ did refer to other testing, such as Bowcott's "Digit Span sub-score," this was only relevant for the limited finding that his "concentration" was within normal limits. *Id.* Additionally, the ALJ did not refer to isolated behavior such as playing video games to support a "finding that Bowcott had only moderate difficulties in social functioning," but rather to support the finding that Bowcott has the "capacity to maintain

concentration, persistence, and pace." *Id.* Again, the Court will not re-weigh conflicting evidence—such as the fact that Bowcott is unable to pay bills, count change, or handle savings because of an inability to concentrate—and finds that the examiner's findings and Bowcott's ability to concentrate on certain activities are evidence which a reasoning mind would accept as sufficient to support the conclusion that Bowcott has mild difficulties with concentration, persistence, or pace. *Id.*

### b. Activities of Daily Living and Episodes of Decompensation

While Bowcott does not directly argue or confront any issues specifically present in the ALJ's analysis and determination of Bowcott's activities of daily living or episodes of decompensation, the Court will nonetheless conduct an analysis to ensure the ALJ's decision is supported by substantial evidence.

The ALJ found that Bowcott has a moderate restriction in activities of daily living and has experienced no episodes of decompensation. *Tr.*, at 14–15. In determining that Bowcott has a moderate restriction in activities of daily living, the ALJ first considered the fact that Bowcott "reported that he cannot adapt to real world finances," "sometimes needs reminders" to take care of personal needs, and "does not drive," "go out alone," or go outside often. *Id.* at 14. However, the ALJ also considered that Bowcott sometimes prepares "simple meals," and Bowcott himself reported that "his typical day involved him going to school" and he "performed chores such as vacuuming, doing dishes, taking out trash, and cleaning the house …." *Id.* Given that there are facts that support a finding that Bowcott has restrictions in daily activities but also support a finding that Bowcott has performed many normal tasks of daily life—and the ALJ considered both types of evidence—the Court finds there is sufficient to support the conclusion that Bowcott has a moderate restriction in activities of daily living.

Because the Court rejects the assertion that the ALJ made any imbalanced reliance when evaluating the Paragraph B criteria and holds that the ALJ's findings are supported by substantial evidence, the Court denies Plaintiff's objection to the Magistrate Judge's findings regarding the Paragraph B criteria.

**2. Medical Opinion Evaluation**

The ALJ also concluded that Bowcott had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except he was "limited to brief and superficial interaction with the public or co-workers." *Tr.*, at 15. The Court finds the ALJ's conclusion is supported by substantial evidence.

Bowcott argues that the ALJ's conclusion cannot be supported by substantial evidence because the ALJ's "misunderstanding of Asperger's Syndrome" led the ALJ to erroneously believe that there was no credible evidence indicating that he is incapable of work. *See Pl's. Mem. in Supp. of J. on the Pleadings*, at 6. In fact, Bowcott asserts, "there were two treating source opinions, in addition to a teacher opinion, that included specific statements and explained how [his] Asperger's syndrome affected his behaviors and limited him." *See Objections*, at 3. For example, Dr. Dicristofaro, Bowcott's treating physician, "noted extreme limitations in Bowcott's ability to deal with the public, interact with supervisors, and maintain attention/concentration and further explained that Bowcott had 'emotional lability' and was 'unable to perform structured work independently.'" *See Pl's. Mem. in Supp. of J. on the Pleadings*, at 7. Additionally, Bowcott's treating psychologist, Ms. Robinson, stated that he "doesn't interact well with others due to his Aspergers disorder," "loses interest," "forgets activities," and "cannot continue in typical work without interruption." *Id.* Finally, Ms. Solomon, a former teacher, stated "several disturbing things" in her assessment of Bowcott's ability to stay on task and to relate to others, stating "there

were times that Bowcott could only work if permitted to take off his shoes and socks or sit under a table with no classmates speaking to him." *Id.* at 8.

Unfortunately for Bowcott, the existence of the above evidence that contradicts the ALJ's decision cannot by itself lead to a finding that the ALJ's decision was not based on substantial evidence. After all, the requirement that the Court not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary" necessarily implies that there can and will be evidence that does not support the decision made by the Secretary or the ALJ. The question the Court must ask is whether, based on the whole record, the ALJ considered the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. We hold that he did.

As Bowcott himself admits, the above evidence *was* considered by the ALJ, and "rejected" for "faulty reasons." *See Pl's. Mem. in Supp. of J. on the Pleadings*, at 6. Regarding Dr. Dicristofaro's and Ms. Robinson's opinion, the ALJ stated that he gave them "little weight" because they are "inconsistent" with the evidence of the record for the numerous reasons the Magistrate Judge described. *Tr.*, at 19; *Proposed Findings and Recommendation*, at 18. Regarding Ms. Solomon, the ALJ acknowledged that she "had the opportunity to observe [Bowcott] on a daily basis" and, because she is a teacher, she is "familiar with the progress and behavior that can be expected from a child of [Bowcott's] age and ability. *Tr.*, at 20. Thus, the ALJ gave Ms. Solomon's opinion "some weight," but also recognized her opinion was not "entirely consistent with the record." *Id.* Specifically, "according to the claimant's consultative examination, the claimant interacted appropriately, exhibited normal eye contact, delivered normal speech, had a dysphoric mood and restricted affect with fair insight and normal judgment," and "his … concentration [was] within normal limits." *Id.* However, the ALJ held these findings were

"inconsistent" with Ms. Solomon's allegation that claimant has a "very serious problem" with focusing long enough to finish a task and working at a reasonable pace. *Id.* Finally, the ALJ noted that Ms. Solomon's opinion was provided in "checklist-form" and included "minimal explanation" for the reasonings given. *Id.* at 21.

Bowcott also argues that because the ALJ "failed to provide RFC limitations that would adequately incorporate any of the activities in which Ms. Solomon identified Bowcott to have 'a very serious problem' performing," that indicates the "ALJ did not, in fact, give Ms. Solomon's opinion any weight at all." *See Pl's. Mem. in Supp. of J. on the Pleadings*, at 8–9. This is not an accurate statement. The ALJ found that Bowcott "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to brief and superficial interaction with the public or co-workers." *Tr.*, at 15. From this limitation, it can certainly be inferred that Ms. Solomon's opinions—such as her opinion that Bowcott has a very serious problem with "expressing anger appropriately" and "interpreting [the] meaning of facial expression[s]"—were a factor in the ALJ's decision that Bowcott is limited to work with brief and superficial interactions with the public or co-workers. *Id.* at 20. Therefore, the ALJ considered the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence.

## IV. Conclusion

Accordingly, for the foregoing reasons, the Court **ADOPTS** the Proposed Findings and Recommendations of Magistrate Judge Tinsley, and therefore **DENIES** Plaintiff's Memorandum in Support of Judgment on the Pleadings, **GRANTS** Defendant's Brief in Support of Defendant's Decision (ECF No. 15), **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this matter from the Court's docket.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge Tinsley, counsel of record, and any unrepresented parties.

ENTER: September 25, 2018

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE